IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JTH TAX LLC d/b/a LIBERTY TAX SERVICE f/k/a JTH TAX INC., | § | |
| Plaintiff, | § | |
| V. | § | No. 3:25-cv-1234-K |
| PATRICK PEREZ, CHRISTOPHER PEREZ, and PEREZ & ASSOCIATES, INC. d/b/a AJP INSURANCE & TAX SERVICES, | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE**

After Defendants Patrick Perez, Christopher Perez, and Perez & Associates, Inc. d/b/a AJP Insurance & Tax Services failed to respond to its complaint or otherwise appear to defend this lawsuit, Plaintiff JTH Tax LLC d/b/a Liberty Tax Service f/k/a JTH Tax, Inc. ("Liberty") moved for default judgment. *See* Dkt. No. 12.

And, after Liberty obtained an entry of default against each Defendant, *see* Dkt. Nos. 13-15, United States District Judge Ed Kinkeade referred its motion for default judgment to the undersigned United States magistrate judge for hearing and for findings and recommendation. *See* Dkt. No. 16; 28 U.S.C. § 636(b).

And, for the reasons and to the extent set out below, the Court should grant in part and deny in part the motion for default judgment.

**Legal Standards**

When a defendant has "failed to plead or otherwise defend" an action, the Court

may enter a default judgment if the plaintiff establishes the following prerequisites: (1) the defendant was served with the summons and complaint and default was entered; (2) the defendant is not "a minor or incompetent person"; and (3) the defendant is not in the military. FED R. CIV. P. 55(b)(2); *see also* 50 U.S.C. § 3931(a), (b) (providing "[p]rotection [for] servicemembers against default judgments").

In this circuit, there is a required three-step procedure to obtain a default judgment: (1) default by the defendant; (2) entry of default by the Clerk of the Court; and (3) entry of default judgment by the district court. *See N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996) (defining "the terms regarding defaults").

Even though the United States Court of Appeals for the Fifth Circuit favors resolving cases on their merits rather than granting default judgments, this preference is "counterbalanced by considerations of social goals, justice, and expediency, a weighing process [that] lies largely within the domain of the trial court's discretion." *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 936 (5th Cir. 1999).

In consideration of these competing preferences, the Court takes a two-part approach in determining whether to grant entry of default judgment. *See Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (requiring a "sufficient basis in the pleadings for the judgment entered"); *see also Lindsey v. Price Corp.*, 161 F.3d 886, 893 (5th Cir. 1998) (stating "relevant factors" in determining whether default judgment is appropriate).

First, the Court considers the following six non-exhaustive factors to decide

whether default judgment is appropriate: (1) "whether the default was caused by a good faith mistake or excusable neglect"; (2) "whether there has been substantial prejudice"; (3) "the harshness of a default judgment"; (4) whether there are "material issues of fact"; (5) "whether the grounds for a default judgment are clearly established"; and (6) whether the Court would be "obliged to set aside the default on the defendant's motion." *Lindsey*, 161 F.3d at 893.

And default judgment may be appropriate where a defendant fails to follow court orders. *See McGrady v. D'Andrea Elec., Inc.*, 434 F.2d 1000, 1001 (5th Cir. 1970) (upholding a default judgment due to a defendant's "delay and failure to comply with court rules").

Next, the Court must assess the merits of the plaintiff's claims and find a "sufficient basis in the pleadings for the judgment entered." *Nishimatsu*, 515 F.2d at 1206; *see also Escalante v. Lidge*, 34 F.4th 486, 493 (5th Cir. 2022) ("[E]ven if a defendant defaults, a court may still deny default judgment if the plaintiff has failed to state a claim on which relief can be granted." (citing *Lewis v. Lynn*, 236 F.3d 766, 767-68 (5th Cir. 2001) (per curiam))).

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must "contain a short and plain statement of the claim showing the pleader is entitled to relief." FED R. CIV. P. 8(a)(2).

This requirement "give[s] the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

By defaulting, the defendant is deemed to admit "the plaintiff's well-pleaded

allegations of fact" and is not deemed to "admit allegations that are not well-pleaded or to admit conclusions of law." *Nishimatsu*, 515 F.2d at 1206.

The factual allegations, assumed to be true, need only "be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

And, so, detailed allegations are not required, but "the pleading must present more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"A default judgment … establishes the defendant's liability. But it does not establish the amount of damages." *United States v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987).

So, "in the context of a default judgment, unliquidated damages normally are not awarded without an evidentiary hearing … [except] where the amount claimed is a liquidated sum or one capable of mathematical calculation." *See James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993). A sum capable of mathematical calculation is one that can be "computed with certainty by reference to the pleadings and supporting documents alone." *Id.* at 311. Thus, affidavits submitted to support a claim for mathematically calculable damages "must be sufficiently detailed to establish necessary facts." *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979).

Two more caveats: "[A] 'party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default.' In fact, '[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations.'" *Lewis*, 236 F.3d at 767 (citations omitted). And,

before it may enter default judgment, "the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." *Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001) (quoting *Williams v. Life Savings & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986)); *see also Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583-84 (1999) (federal courts have independent duty to examine their own subject matter jurisdiction).

## Analysis

### I. The Court has jurisdiction over the subject matter of this lawsuit and the defaulting defendants.

Deciding the motion for default judgment "begins, as it must, by examining the Court's jurisdiction." *Wattiker v. Elsenbary Enters., Inc.*, No. 3:22-cv-940-B-BN, 2023 WL 5167023, at *3 (N.D. Tex. May 19, 2023) (cleaned up; quoting *Hammerschmidt v. Garland*, 54 F.4th 282, 287 (5th Cir. 2022)), *rec. accepted*, 2023 WL 5167019 (N.D. Tex. June 13, 2023); *accord Louisiana v. U.S. Dep't of Energy*, 90 F.4th 461, 466 (5th Cir. 2024) ("Jurisdiction is always first." (citation omitted)).

Through its complaint, Liberty alleges that the Court possesses subject-matter jurisdiction under both 28 U.S.C. § 1331 and § 1332. *See* Dkt. No. 1, ¶¶ 11 & 12.

Starting with Section 1332 – which requires in part that each plaintiff's citizenship must be diverse from each defendant's citizenship – the undersigned cannot agree with Liberty at least insofar as it has not properly alleged its own citizenship.

Liberty alleges that it is "a Delaware limited liability company with its principal place of business" in Virginia. Dkt. No. 1, ¶ 5.

But an LLC is not a corporation, and so, the Court is not concerned about where the LLC's nerve center may be located. *Cf.* 28 U.S.C. § 1332(c)(1); *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010).

Instead, "the citizenship of an LLC is determined by the citizenship of all of its members." *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008) (cleaned up).

And, so, "[t]he allegations of an LLC's citizenship must include each member's identity and citizenship," *Phillips N. Am. LLC v. U.S. Auto. Ass'n*, No. 3:25-cv-1210-BN, 2025 WL 1828523, at *2 (N.D. Tex. July 2, 2025) (cleaned up).

But Liberty also provides factual content to plausibly support its claim that Defendants violated a federal statute, the Defend Trade Secrets Act ("DTSA").

And its assertion of a more than frivolous or insubstantial violation of federal law means that the Court possesses subject-matter jurisdiction under Section 1331. *See, e.g.*, *Copeland v. E*Trade Cap. Mgmt., L.L.C.*, No. 24-10658, 2025 WL 66732, at *2 (5th Cir. Jan. 10, 2025) (per curiam).

Section 1331 also serves as an "independent basis of subject matter jurisdiction" that allows for supplemental jurisdiction under 28 U.S.C. § 1367 for MODE's purely state law claims. *Atkins v. Propst*, No. 22-10609, 2023 WL 2658852, at *2 (5th Cir. Mar. 28, 2023) (per curiam) (citing *Arena v. Graybar Elec. Co., Inc.*, 669 F.3d 214 (5th Cir. 2012)).

Liberty further alleges factual content from which the Court may reasonably infer that Defendants "have purposefully availed [themselves] of the benefits and

protections of [Texas] such that [they] should reasonably anticipate being haled into court [here].” *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019) (cleaned up).

## II. The procedural requirements for default judgment have been met.

The individual defendants were personally served, while the entity defendant was served through the individual designated by law to accept service on its behalf (also one of the individual defendants). *See* Dkt. Nos. 14-1 & 14-2. The Clerk entered default as to each defendant on August 27, 2025. *See* Dkt. No. 15. And Liberty has provided sufficient evidence reflecting that neither individual defendant is in the military service, a minor, or incompetent. *See* Dkt. Nos. 14-2 & 14-3.

## III. The allegations support default judgment as to most claims asserted.

Liberty alleges violations of the DTSA and state law claims for breach of contract, conversion, unjust enrichment, and tortious interference, presumably under Virginia law. *See* Dkt. No. 1, ¶ 13 (“Pursuant to the agreements at issue, Virginia law applies to Liberty’s claims.”).

Starting with the trade secrets,

> [t]he DTSA provides that “[a]n owner of a trade secret that is misappropriated may bring a civil action under this subsection if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce.” 18 U.S.C. § 1836(b)(1). Accordingly, the elements of a DTSA claim are “(1) ownership of a trade secret that (2) has been misappropriated and that (3) relates to a product or service in interstate commerce.” *Providence Title Co. v. Truly Title, Inc.*, 547 F. Supp. 3d 585, 594 (E.D. Tex. 2021).

*BarZ Adeventures Inc. v. Patrick*, No. 4:20-CV-299, 2022 WL 4082464, at *3 (E.D. Tex. Sept. 6, 2022).

To plausibly allege the existence of a trade secret, a plaintiff need not

> provide a specific description of the trade secret. It is sufficient if the allegations demonstrate that at least some aspects of the information at issue constitute a trade secret. Consequently, courts routinely find a plaintiff's allegations to be sufficient if they identify specific groupings of information that contain trade secrets, identify the types of trade secrets contained in the groupings, and explain how the alleged trade secrets were maintained and treated as trade secrets. For example, [identifying] specific documents along with a summary that the documents contained trade secrets related to customer information and financial data [has been found] sufficient.

*Centennial Bank v. Holmes*, 717 F. Supp. 3d 542, 561 (N.D. Tex. 2024) (cleaned up).

And

> [c]ourts commonly find that a plaintiff sufficiently alleges misappropriation by asserting that the defendants copied trade secrets onto external drives or emailed such files using a personal email when the defendants are subject to confidentiality agreements or other privacy policies. For example, the plaintiff presented adequate evidence of misappropriation based on claims that the defendant took materials he knew were trade secrets and improperly copied them to a personal USB drive prior to his departure despite his obligations under various agreements.
>
> Further, circumstantial evidence such as a defendant's motivation and leaving the plaintiff to work for a competitor doing substantially similar work also often indicates misappropriation.

*Id.* at 563-64 (cleaned up).

Liberty's applicable well-pleaded allegations support each element of a plausible DTSA claim, such that these allegations are enough to show more than a speculative right to relief under the DTSA, and, so, the complaint provides fair notice to Defendants. *See, e.g.*, Dkt. No. 1, ¶¶ 14-55 & 65-85.

Liberty similarly alleges a plausible breach of contract claim against Patrick Perez, *see id.*, ¶¶ 14-64, where, "[u]nder Virginia law, the elements of a breach of contract action are '(1) a legally enforceable obligation of a defendant to a plaintiff;

(2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation,'" *Kruglyak v. Home Depot U.S.A., Inc.*, 750 F. Supp. 3d 644 (W.D. Va. 2024) (quoting *Filak v. George*, 594 S.E.2d 610, 613 (Va. 2004)).

Liberty also alleges a plausible claim of conversion where Defendants are alleged to have exercised wrongful control over, for example, client lists and similar information for "customers who patronized Patrick Perez's former Liberty franchise." Dkt. No. 1, ¶ 87; *see id.*, ¶¶ 14-55 & 86-92; *In re Grantai*, 307 B.R. 827, 834 (E.D. Va. 2002) ("In Virginia, the tort of conversion requires proof of the following elements: (1) wrongful exercise of authority or control; (2) over another's personal property; (3) depriving it of its possession or other right or incident of ownership." (citing *United Leasing Corp. v. Thrift Ins. Corp.*, 440 S.E.2d 902, 905 (Va. 1994))).

Liberty's alternative theory of unjust enrichment is equally plausibly stated. *See, e.g.*, Dkt. No. 1, ¶¶ 93-99 ("Patrick Perez retained Liberty's Trade Secrets after the Franchise Agreement terminated, at which point he no longer had a license to use or possess them, yet he shared those Trade Secrets with Christopher Perez and AJP Tax without authorization to do so."); *compare Microstrategy, Inc. v. Netsolve, Inc.*, 358 F. Supp. 2d 533, 537 (E.D. Va. 2005) ("Under Virginia law, the elements of unjust enrichment are (1) the plaintiff's conferring of a benefit on the defendant, (2) the defendant's knowledge of the conferring of the benefit, and (3) the defendant's acceptance or retention of the benefit under circumstances that render it inequitable for the defendant to retain the benefit without paying for its value." (cleaned up)).

But Liberty has not provided factual content from which the Court may reasonably infer a plausible claim of tortious interference against Christopher Perez where Liberty fails to provide facts that could show that Christopher induced or caused Patrick to breach the franchise agreement.

Ultimately, a plaintiff "must prove four elements to state a claim for tortious interference with contract in Virginia: '(1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of [defendant]; (3) intentional interference inducing or causing the breach or termination of the relationship or expectancy; and (4) resultant damage to the [plaintiff].'" *Augustin v. SecTek, Inc.*, 807 F. Supp. 2d 519, 525 (E.D. Va. 2011) (quoting *Int'l Union, United Mine Workers of Am. v. Covenant Coal Corp.*, 977 F.2d 895, 899 (4th Cir. 1992)).

And, at most, Liberty has offered the Court conclusions as to the third element. *See, e.g.*, Dkt. No. 1, ¶ 104 ("Christopher Perez intentionally interfered with and instigated Patrick Perez's breaches of the Franchise Agreements by operating AJP Tax from the location of Christopher Perez's former Liberty franchises and using Liberty's Trade Secrets to solicit Liberty's clients, thereby unlawfully competing with Liberty.").

## IV. Consideration of other factors supports default judgment.

Default judgment is a harsh remedy, but, as set out above, the record supports default judgment. There has not been substantial prejudice against Liberty. There are clearly established grounds for default, as set out above. And there is no indication that the default was caused by good faith mistake or excusable neglect.

And, so, the Court would not necessarily feel obligated to set aside a default (should a motion to do so be filed). *See Lindsey*, 161 F.3d at 893.

### V. Liberty is entitled to relief, but further proceedings may be necessary to fashion that relief.

Liberty concludes its motion by requesting a hearing to determine damages. *See* Dkt. No. 12, ¶13 ("Plaintiff requests compensatory and liquidated damages in the amount of $275,666.84, plus interest that has accrued since August 15, 2023, and attorneys' fees and Plaintiff respectfully requests an oral hearing to establish the full amount of damages resulting from this breach of contract.").

And courts routinely "defer a determination as the damages to be awarded pending a future hearing." *E.g.*, *Adams v. Chime Sols., Inc.*, No. 3:23-cv-1482-S, 2024 WL 4137263, at *7 (N.D. Tex. Aug. 14, 2024), *rec. accepted*, 2024 WL 4139646 (N.D. Tex. Sept. 9, 2024); *cf. Rolex Watch USA, Inc. v. Trujillo*, No. 2:23-cv-101-Z-BR, 2023 WL 11795676, at *4 (N.D. Tex. Nov. 16, 2023) (Even where "[a] defendant's default concedes the truth of the well-pleaded allegations of the [c]omplaint," a plaintiff still must "marshal competent evidence in support of damages." (cleaned up)).

And, so, if the Court adopts or accepts the undersigned's recommendation that the motion for default judgment be granted in part as set out above, the Court should then refer to the undersigned for recommendation the issues of the exact amount of damages, including reasonable and necessary attorneys' fees and costs, and the exact scope of the permanent injunction that the Court should enter.

## Recommendation

The Court should grant in part and deny in part Plaintiff JTH Tax LLC d/b/a

Liberty Tax Service f/k/a JTH Tax, Inc.'s motion for default judgment [Dkt. No. 12] and then refer the issues of damages and injunctive relief to the undersigned for further recommendation.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: August 20, 2026

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE